UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00157 -R

DENNIS STALLINS,                                                                    Plaintiff

v.

CITY OF PRINCETON,
CITY OF PRINCETON POLICE DEPARTMENT AND
TIMOTHY MERRICK,                                                                    Defendants

## MEMORANDUM OPINION

This matter is before the Court upon Defendants' Motion for Summary Judgment. (Docket No. 16). Plaintiff Dennis Stallins has responded, (Docket No. 25) and Defendants have replied. (Docket No. 31). This matter is now fully briefed and ripe for adjudication. For the following reasons, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff has alleged various claims stemming from his August 20, 2012 arrest: that the Defendants 1) used excessive force during his arrest; 2) used cruel and unusual punishment by placing Plaintiff, a disabled man, in Caldwell County jail following his arrest; and 3) were negligent. The characterization of what happened on that evening is contested by the parties, however Defendants have provided video and audio recordings of the arrest.

Plaintiff Stallins is a quadriplegic. Additionally, he underwent a surgery in March of 2012 that removed his right hip, leg, and foot after suffering from a severe infection. On August 20, 2012, Stallins rode as a passenger to the Dollar General in Princeton, Kentucky. His son's wife, Tonya Adams, drove the vehicle. When they arrived, she entered the store and he

1

remained in the vehicle. Police officers, including Defendant Timothy Merrick, were called to the scene after receiving a report that Stallins had an outstanding state court arrest warrant, and that he may be armed. (Docket No. 25). Officers approached Stallins while he was in the vehicle.

At this point, the parties' stories diverge. According to Defendants, Officers asked Stallins to keep his hands up on the dashboard, but Stallins dropped his hands to his lap area and placed his left hand on a rifle. Officer Merrick handcuffed Stallins' hands behind his back, while Officer Hardin secured the rifle and asked if Stallins had any more weapons. Stallins replied that he did not, and Officer Merrick removed the handcuffs so that Stallins could assist the Officers in getting into his wheelchair. Officers then noticed a shotgun in the back seat. After securing the shotgun, Officers saw Stallins holding a handgun. Officers pulled Stallins from the vehicle and onto the pavement, handcuffing him behind his back. As they did this, another handgun fell from the waistband of his shorts. In all, Officers found four guns, and determined that all were loaded and chambered. Stallins indicated that he had a concealed weapons license but Officers confirmed on the scene that he did not have one. Officers put Stallins in his wheelchair and offered him medical treatment, which he refused. A family member on the scene insisted, and Officers called an ambulance.

Stallins was transported to the Caldwell Medical Center in Princeton, Kentucky, where he was examined by a nurse and the emergency room doctor, Dr. Michael Howard. (Docket No. 16; Howard Dep.). He was treated for a superficial abrasion and bruising to his knee. An X-ray of his ribs and knee came back normal. His other ailments, pressure ulcers, were deemed chronic as a result of his amputation and confinement to a wheelchair and were not caused by the events of the evening. Dr. Howard indicated that Stallins was acceptable for admission to jail on

the Prisoner Medical Clearance Report with no special suggestions for his care. Stallins was then transported to the Caldwell County Jail. Nicholas Dickerson, the deputy jailer on duty, booked Stallins under standard operating procedures. (Docket No. 16; Dickerson Dep.). Stallins signed an intake form indicating that he was not in need of medical attention. Dickerson placed Stallins into a separate cell with its own shower and bathroom because Stallins was in a wheelchair. Dickerson stated that nothing occurred while Stallins was at the Jail that required medical attention. A friend picked Stallins up the next morning, and he did not request an ambulance.

Stallins paints a different picture of events, starting with his arrest. Stallins claims to have handed two guns out the window to the Officers. He agrees that Officer Merrick first handcuffed him in the truck with his hands behind his back, before removing the handcuffs and replacing them with his hands in front of his body. But Stallins alleges that Officer Merrick put him in a headlock and threw him onto the pavement of the parking lot. The affidavit of Donna Davis, Assistant manager of the Dollar General, states that she saw officers "throw [Stallins] onto the blacktop." (Davis Aff.). Next, Stallins alleges that all three Officers pinned him down and kicked and hit him, and that Officer Merrick told Stallins he wished he could kill him. Lindy Rogers, who was in a different vehicle parked at the Dollar General, claims to have heard this statement as well. (Rogers Dep.). Plaintiff attaches the Affadavit of his expert witness, Jim Blackburn. Blackburn, a former police officer, reviewed the videos and believes that the Officers used excessive force in this case. (Blackburn Aff.).

Additionally, Stallins claims that the Caldwell County Hospital personnel were not prepared to care for a disabled inmate and that it was "cruel and unusual" to place him there when the jail was not equipped to care for him. He also alleges that he "did not receive at least

3

twelve (12) medications when he was in jail" and that he was "subjected to unbearable conditions in jail and he could not control his nervous stomach and his bowels and he was dirty during the night until he left." (Docket No. 25).

Defendants have provided three audio/visual recordings from the vehicles of Officers Trent Hardin, Timothy Merrick, and Logan Payne. Defendants' Motion for Summary Judgment and Reply Supporting Defendants' Motion for Summary Judgment refer extensively to the audio and video recordings of the arrest, but Plaintiff's Response to Motion for Summary Judgment does not mention the recordings. The Court has reviewed the videos in this case. Officer Merrick's recording does not show video of the scene, but it captures the audio. In this recording, an Officer asks Stallins if he has any other weapons and whether he has any weapons in his pockets. Stallins responds "no." Officers ask him if he can lean forward on his own will without hurting himself, and offer to help. Next, Officers can be heard finding additional weapons. At the end of the encounter, Officers ask whether Plaintiff needs emergency medical treatment or an ambulance and confirm that he is refusing medical treatment. Officers call an ambulance in spite of his refusal.

Officer Logan Payne's recording provides the Court a visual of the arrest. In this video, the Officers approach Stallins in the truck. The Officers repeatedly tell Stallins to keep his hands on the dashboard. They tell him twice, "hands on the dash," then find another weapon in the vehicle. An Officer states that it is loaded and chambered. Stallins is then told again three times to keep his hands on the dashboard. At this point, an Officer removes Stallins from the vehicle. Around this time, Officer Merrick can be heard yelling at Stallins, "We asked if you had any more guns in the car, do you not know what that means? You could have got yourself killed."

**STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. S*ee Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id*. (citin*g Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence ... of a genuine dispute...." Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), abrogated on other grounds by *Lews v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 1776 (2007).

**DISCUSSION**

Plaintiff has alleged various claims stemming from his August 20, 2012 arrest: that the Defendants 1) used excessive force during his arrest; 2) used cruel and unusual punishment by placing Plaintiff in Caldwell County jail following his arrest; and 3) were negligent.

I. **Excessive force**

In order to prevail on his 42 U.S.C. § 1983 action for Officers' use of excessive force, Stallins must establish that a constitutional violation occurred and that Defendants are not entitled to qualified immunity. *Slusher v. Carson*, 540 F. 3d 449, 453 (6th Cir. 2008). Because Defendants assert that they are entitled to qualified immunity, the Court will first determine whether Defendants' actions were unconstitutional before turning to whether Defendants are entitled to qualified immunity for any such violation.

A. **Constitutional Violation**

There is no dispute as to whether Stallins was "seized" for purposes of triggering the Fourth Amendment's protections. Accordingly, the Court will proceed to determine whether the force used was unreasonable under the Fourth Amendment. In making this determination, courts employ an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 391 (1989). "Relevant factors to consider in evaluating what level of force is reasonable include the 'severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Slusher v. Carson*, 540 F. 3d 449, 453 (6th Cir. 2008) (alteration in original) (quoting *Graham*, 490 U.S. at 396). Still, the Sixth Circuit advises that "[t]hese factors are not an exhaustive list, and the ultimate inquiry is whether the seizure was reasonable under the 'totality of the circumstances.'" *Id.* (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006)).

6

Additionally, the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene rather than with the benefit of hindsight. *Caie v. W. Bloomfield Twp.*, 485 F. App'x 92, 95 (6th Cir. 2012) (citing *Graham*, 490 U.S. at 396). This means that courts must take into account "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. (quoting *Graham*, 490 U.S. at 397). "Ultimately, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. (internal quotation marks omitted) (quoting *Graham*, 490 U.S. at 397).

The first factor identified in *Graham* is the severity of the crime at issue. Here, Officers were called to investigate someone with an outstanding warrant who was identified as being armed. (Docket No. 25). Stallins was ultimately charged with Carrying a Concealed Weapon, KRS 527.020, a Class A misdemeanor. (Docket No. 16). The Supreme Court has consistently held that where the underlying crime is only a nonviolent misdemeanor, a lesser degree of force is authorized. *Tennessee v. Garner*, 417 U.S. 1, 12, 94 S.Ct. 2074, 40 L.Ed.2d 612 (1985). Generally, a misdemeanor violation of carrying a concealed weapon is not considered "notably severe criminal activity." *Sheffey v. City of Covington*, 564 Fed. Appx. 783, 790 (6th Cir. 2014). However the Court must examine the totality of the circumstances, which can turn even a misdemeanor into a "serious and immediate threat." *Id.*. Here, the underlying crime charged was a relatively minor misdemeanor. However, it appears from the video recording that Stallins did not comply with Officers' requests to keep his hands on the dashboard. Additionally, he can be heard responding "no" when asked if he had any additional weapons.

The second factor identified in *Graham* is the potential threat to officers or others. Stallins states that "the guns in the truck were not guns for the plaintiff to be 'armed'" and that "[t]he plaintiff was not a threat of harm to the three (3) officers and the guns were not a threat of harm to the three (3) officers." (Docket No. 25). Defendants note that Stallins "reached for a weapon on multiple occasions in spite of the officers' clear instructions; lied to the officers about the presence of additional weapons in the vehicle; induced the officers to uncuff him to move to his wheelchair and then reached for a weapon; placed the officers in justifiable fear of the discharge of weapons (as can be heard in their reactions) . . . ." (Docket No. 16).

Here, Officers were confronted with an individual who was not forthcoming about the number of weapons in the vehicle. The video recording shows confusion and fear on the part of the Officers, as they discovered more weapons throughout the stop. Additionally, Stallins alleges that Defendants locked down the Dollar General, which further indicates that they considered Stallins to be a threat to others in the area.

The third factor in *Graham* is whether the suspect is actively resisting arrest or attempting to evade arrest by flight. There is no indication that Stallins attempted to evade arrest. However, it is notable that Officers had to repeatedly tell him to leave his hands on the dashboard, before finding additional guns and removing him from the vehicle.

The video recording of the arrest shows that the force used consisted of Stallins being removed from his vehicle and brought to the ground of the parking lot. While the video appears to corroborate some of Defendants' version of events, it is not entirely clear what transpired as Stallins was removed from the vehicle and while he was on the ground. Stallins provided the affidavits of two witnesses at the scene, Donna Davis and Lindy Rogers, who corroborate parts of his story. The reasonableness of the Officers' behavior is a genuine issue of material fact

precluding summary judgment on this claim. Therefore, Defendants' Motion for Summary Judgment as to the excessive force claim is DENIED.

## II. Deliberate indifference

Stallins alleges that the Defendants engaged in cruel and unusual punishment by taking him to the county jail, where he was denied adequate medical care. With regard to prisoners' claims of denial of medical care, "'[d]eliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." T*aylor v. Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. 825, 837–47 (1994)).

Stallins alleges that he did not receive certain medications while in jail, and that he could not control his bowels and was dirty through the night. However, he fails to specify what medical attention he needed and fails to allege any detrimental effect resulting from the lack of

care while in jail. After his examination, Dr. Howard indicated that Stallins was acceptable for admission to jail on Prisoner Medical Clearance Report with no special suggestions for his care. Stallins was then transported to the Caldwell County Jail where he signed an intake form indicating that he was not in need of medical attention. He did not request an ambulance when he left the jail.

Stallins did not include a report from a doctor or expert witness detailing any medical needs that went unaddressed, or illustrating any ill effects of his treatment while in jail. Additionally, aside from his own claims, he has not presented "more than a scintilla of evidence" regarding the Defendants' required culpable state of mind for this claim. Therefore, the Defendants' Motion for Summary Judgment on the deliberate indifference claim is GRANTED.

### III. Negligence

Plaintiff also appears to allege a state law claim of negligence. Under Kentucky law, to sustain a negligence claim, a plaintiff must prove that a defendant: had a duty to the plaintiff; he/she breached that duty; and an injury to the plaintiff resulted due to the actions of the defendant. *Illinois Cent. R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967). An absence of any of these elements leads to the failure of the claim. *Id.*

Defendants argue that they are entitled to qualified immunity because their actions in arresting Stallins were discretionary and undertaken in good faith. Under Kentucky law, qualified official immunity affords protection to public officers sued in their individual capacity from "damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky.2001). Specifically, the defense "applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and

judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Id*. (internal citation omitted). Though the Defendants argue that Officer Merrick is entitled to qualified immunity for the state law negligence claim because he was acting in a discretionary manner in making the arrest of Stallins, this immunity does not apply if it is determined that Officer Merrick acted in bad faith. *Ashby v. City of Louisville*, 841 S.W.2d 184, 188-89 (Ky.1992). Bad faith "can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, i.e., objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Smith v. Nesbitt*, 2003 WL 22462413, at *3-4 (Ky. App. 2003).

Because Defendant's defense of qualified immunity requires a jury to resolve underlying disputed facts regarding the manner of Plaintiff's arrest, summary judgment on Plaintiff's negligence claim is DENIED.

## CONCLUSION

For these reasons, the Defendants' Motion for Summary Judgment (Docket No. 16), is GRANTED in part and DENIED in part. An appropriate order shall issue.